**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------
SHIVA STEIN,                                          :
                                                      :
           Plaintiff,                                 :     Civil Action No. 22-cv-2589
                                                      :
v.                                                    :     **COMPLAINT FOR VIOLATIONS OF**
                                                      :     **SECTIONS 14(a) AND 20(a) OF THE**
PREFERRED APARTMENT                                   :     **SECURITIES EXCHANGE ACT OF**
COMMUNITIES, INC., JOEL T. MURPHY,                    :     **1934**
HOWARD A. MCLURE, STEVE                               :
BARTKOWSKI, JOHN M. CANNON,                           :     **JURY TRIAL DEMANDED**
GARY B. COURSEY, SARA J. FINLEY,                      :
DAPHNE B.  JACKSON, and TIMOTHY A.                    :
PETERSON,                                             :
                                                      :
           Defendants.                                :
--------------------------------------------------------  :

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.       This is an action brought by Plaintiff against Preferred Apartment Inc. ("Preferred

Apartment" or the "Company") and the members Preferred Apartment's board of directors (the

"Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for

their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. §

244.100, in connection with the proposed acquisition of Preferred Apartment by affiliates of

Blackstone Real Estate Income Trust, Inc. ("Blackstone").

2.       Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on March 25, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.  The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Pike Merger Sub II LLC ("Merger Sub II") will merge with and into the Preferred Apartment Communities Operating Partnership, L.P. ("Partnership") and the Partnership will be the surviving partnership in the partnership merger; thereafter, Operations will be merged with and into Pike Merger Sub III LLC ("Merger Sub III"), and Merger Sub III will be the surviving entity in the operations merger; and thereafter, the Company will merge with and into Merger Sub I, with Merger Sub I continuing as the surviving entity of the merger (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on February 16, 2022 (the "Merger Agreement"), each Preferred Apartment stockholder will receive $25.00 in cash (the "Merger Consideration") for each Preferred Apartment share owned. Partnership and the Merger Subs are all affiliates of Blackstone.

1.      As discussed below, Defendants have asked Preferred Apartment's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Goldman Sachs & Co. LLC ("Goldman Sachs") in support of its fairness opinion.

2.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

3.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Preferred Apartment's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

4.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

5.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

6.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company trades on the New York Stock Exchange, headquartered in this District.

**PARTIES**

7.     Plaintiff is, and has been at all relevant times, the owner of Preferred Apartment stocks and has held such stocks since prior to the wrongs complained of herein.

8.     Individual Defendant Joel T. Murphy has served as a member of the Board since May 2019 and is the Chairman of the Board and Chief Executive Officer of the Company.

9.     Individual Defendant Howard A. McLure has served as a member of the Board since January 2014 and is the Company's Lead Independent Director.

3

10.     Individual Defendant Steve Bartkowski has served as a member of the Board since April 2011.

11.     Individual Defendant John M. Cannon has served as a member of the Board since May 2020.

12.     Individual Defendant Gary B. Coursey has served as a member of the Board since December 2010.

13.     Individual Defendant Sara J. Finley has served as a member of the Board since May 2019.

14.     Individual Defendant Daphne B. Jackson has served as a member of the Board since December 2021.

15.     Individual Defendant Timothy A. Peterson has served as a member of the Board since March 2011.

16.     Defendant Preferred Apartment a Maryland corporation and maintains its principal offices at 3284 Northside Parkway NW, Suite 150, Atlanta, Georgia 30327.  The Company's stock trades on the New York Stock Exchange under the symbol "APTS."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the "Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### A.     <u>The Proposed Transaction</u>

19.     Preferred Apartment Communities is a real estate investment trust engaged primarily in the ownership and operation of Class A multifamily properties, with select investments in grocery anchored shopping centers, Class A office buildings, and student housing

4

properties. Preferred Apartment Communities' investment objective is to generate attractive, stable returns for stockholders by investing in income-producing properties and acquiring or originating real estate loans for multifamily properties. As of September 30, 2020, the Company owned or was invested in 125 properties in 15 states, predominantly in the Southeast region of the United States.

20. On February 16, 2022, the Company and Blackstone jointly announced the Proposed Transaction:

> ATLANTA & NEW YORK, February 16, 2022 – Preferred Apartment Communities (NYSE: APTS) ("PAC" or the "Company") today announced that it has entered into a definitive agreement with Blackstone Real Estate Income Trust, Inc. ("BREIT"), under which BREIT will acquire all outstanding shares of common stock of PAC for $25.00 per share in an all-cash transaction valued at approximately $5.8 billion.
>
> Under the terms of the agreement, BREIT will acquire PAC, which includes 44 high-quality multifamily communities totaling approximately 12,000 units concentrated largely in Atlanta, Orlando, Tampa, Jacksonville, Charlotte and Nashville, and 54 grocery-anchored retail assets comprising approximately six million square feet located mostly in Atlanta, Orlando, Nashville and Raleigh. BREIT will also acquire the Company's two Sun Belt office properties and 10 mezzanine / preferred equity investments collateralized by under construction and newly-built multifamily assets.
>
> Joel T. Murphy, PAC's Chairman and Chief Executive Officer, said, "This transaction is an excellent outcome for our stockholders and the culmination of the hard work our first-class team has done over the past few years to simplify and refocus our portfolio."
>
> Howard A. McLure, PAC's Lead Independent Director, added, "Our focus from the outset has been on delivering the best possible outcome for all our stockholders. I would like to thank our entire Board, our team of outside advisors and the PAC

management team for their collective efforts in bringing about this result."

Jacob Werner, Co-Head of Americas Acquisitions for Blackstone Real Estate, said, "We are pleased to acquire Preferred Apartment Communities and its portfolio of high-quality multifamily assets in key Sun Belt markets, which represents a significant majority of the Company's value. Investing using BREIT's perpetual capital will enable us to be long-term owners of these vibrant communities. The Company's grocery anchored retail portfolio performance has also been strong and resilient, and we believe these types of necessity-oriented assets located in areas with growing populations are well-positioned for continued growth."

Werner continued, "The Company has a terrific property management and operations team that shares our commitment to being best-in-class owners. They have deep relationships and real estate expertise within the Sun Belt region, and we look forward to working closely with them to grow the business and continue to deliver a great experience for residents and tenants."

The purchase price represents a premium of approximately 39% over the unaffected closing stock price on February 9, 2022, the date prior to a media article reporting that the Company was exploring strategic options including a sale, and a premium of approximately 60% to the 90-day volume-weighted average price through that date.

**Transaction Terms, Timing and Approvals**

The holders of each series of PAC's preferred stock will receive the $1,000 per share liquidation preference for each share plus accrued but unpaid dividends. Subject to and upon completion of the transaction, PAC's common stock will no longer be listed on the New York Stock Exchange, and PAC will be owned by BREIT.

The transaction has been unanimously approved by PAC's Board of Directors and is expected to close in the second quarter of 2022, subject to approval by PAC's stockholders and other customary closing conditions. The merger agreement also includes a 30-day "go-shop" period that will expire on March 18, 2022. There can be no assurance that this process will result in a superior proposal, and PAC does not intend to disclose

developments with respect to the go-shop process unless and until it determines such disclosure is appropriate or is otherwise required.

**Advisors**

Jones Lang LaSalle Limited, BofA Securities, Lazard Frères & Co. LLC and Wells Fargo Securities LLC are serving as BREIT's financial advisors, and Simpson Thacher & Bartlett LLP is acting as BREIT's legal counsel.

Goldman Sachs & Co. LLC is serving as PAC's lead financial advisor. KeyBanc Capital Markets, Inc., is also serving as financial advisor to PAC. King & Spalding LLP and Vinson & Elkins LLP are serving as the Company's legal counsel.

\* \* \*

21.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that Preferred Apartment's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

22.     On March 25, 2022, Preferred Apartment filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23.    The Proxy Statement fails to provide material information concerning financial projections by Preferred Apartment management and relied upon by Goldman Sachs in their analyses. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and Goldman Sachs (and sometimes calculated by Goldman Sachs) with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that the Proxy provided. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

24.    For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Total Cash NOI, Adjusted EBITDA, Core Funds from Operations per share, Adjusted Funds from Operations per share, Unlevered Free Cash Flow, and Levered Cash Flow, but fails to provide line items used to calculate the metrics and/or a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25.    The Proxy Statement also fails to disclose Levered Free Cash Flow in the Projections. Levered Free Cash Flow was used by Goldman Sachs in its *Illustrative Levered Discounted Cash Flow Analysis*.

26.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28.     Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

29.     With respect to Goldman Sachs' *Selected Publicly Traded Companies Analysis*, the Proxy Statement fails to disclose the individual financial metrics and multiples for the companies observed by J.P. Morgan in the analysis.

30.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose: (i) the inputs and assumptions underlying the application of 9.9% discount rate; (ii) the Company's cost of equity; (iii) the inputs and assumptions underlying the illustrative price to next twelve months' Core FFO multiples ranging from 13.5x to 23.5x; and (iv) the company-specific inputs used to apply the capital asset pricing model.

31.     With respect to Goldman Sachs' *Illustrative Levered Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values of Preferred Apartment; (ii) line items used to calculate the Company's projected levered free cash flows; (iii) the inputs and assumptions underlying the use of a range of terminal year multiples ranging from 13.5x to 23.5x; (iv) the inputs and assumptions underlying the use of the range of discount rates of 8.5% to 11.5%; (v) the inputs and assumptions underlying the use of perpetuity growth rates ranging from 1.0% to 6.9%; and (vi) the number of fully diluted shares of the Company.

32.     With respect to Goldman Sachs' *Premiums Paid Analysis*, the Proxy Statement fails to disclose the transaction reviewed for the analysis and the premiums paid in each transaction.

33.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision

regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

34.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

35.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

36.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

37.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were

misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

38.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

39.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## <u>COUNT II</u>

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

40.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

41.     The Individual Defendants acted as controlling persons of Preferred Apartment within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Preferred Apartment, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control

and did influence and control, directly or indirectly, the decision making of Preferred Apartment, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

42.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

43.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Preferred Apartment, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

44.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

45.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

46.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by

their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

47.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.     Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: March 30, 2022                    By:   **MELWANI & CHAN LLP**

/s/ *Gloria Kui Melwani*
Gloria Kui Melwani
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*